Our first case is EklecCo v. Town of Clarkstown, No. 19-17-77. Good morning, Your Honors. May it please the Court. Craig Leslie from Phillips-Leidel on behalf of the appellants and plaintiffs, the EklecCo entities in this case. In the Coons case, the Supreme Court drew a line as to what governments may or may not do with respect to land use approvals. In particular, that they cannot use a discretionary land use approval or the granting of a discretionary benefit to demand that an applicant surrender constitutionally protected rights or interests that lack a nexus or rough proportionality to the impacts of the specific approval being sought. And that rule, as the Supreme Court stated it in Coons, applies even if there is no entitlement to the benefit in the first instance and even if the entity could otherwise exercise its discretion to deny it outright. It also applies whether the demand is for the surrender of real property or an interest in property or monetary exaction. The town here, however, claims it has absolute and unfettered discretion to demand whatever it wants. Let me ask you, Mr. Leslie. Yes, Your Honor. Wouldn't this be the first time ever that any court has said when a municipality is selling their own property that they can't put conditions on it? The cases that you cite, Coons, Dolan, Nolan, are all cases where someone wants some type of approval for land use and a condition is put on it. So isn't this quite a remarkable thing to say that when a municipality is operating as a landowner that they cannot put restrictions on the sale of that property? This would be the first time ever, wouldn't it? It's a unique case, Your Honor, in the nature of the mechanism they created. And we've never said that they couldn't place appropriate conditions upon the sale of the property. However, we have said that it has to be related to the impacts of the discontinuance and abandonment of the roads, number one. And number two, if you create this process where you say, we are going to transfer or abandon, discontinue the town roads, but we're going to put in place a moratorium, and then you're going to have to come back to us. And you're going to have to come back to us repeatedly if you ever want to do anything else with your property. What you're doing is you're creating a situation where you've now created a discretionary benefit. If Coons would apply this type of situation, going back to the original sale of the property, under Coons they couldn't even ask for above market value for the property then because under Coons that would be disproportionate to what they're losing. Isn't that a remarkable thing? Well, Your Honor, it would be a fact-specific inquiry. It's not this case because we're not challenging that initial aspect of it. What we're challenging is that you have here a set of conditions that did, we believe, exceed the scope of what they could do. However, it also created – You're saying Coons has to apply to this situation. Is that what you're telling this Court? I am, Your Honor. And if I'm saying to you if Coons would apply this situation, a town couldn't say, you know what, we want to charge above market value for this land to this person. Under Coons you couldn't do that if that test applies here. Your Honor, you wouldn't be able to do that and then say you have to come back to us again and again and pay still more millions of dollars to get a release of this kind of restriction. It is a unique case in the nature of the mechanism and the process that they created. They created a process that required us to come back to them after this two-year moratorium if we wanted to do anything else with the property, as opposed to amending the zoning code to say this is the limit on what you can do. They specifically created a mechanism that required you to come back. That's what distinguishes it or makes it a little bit different from Sherman. You get the same result, but you get it a different way. Wasn't your cause of action complete at the time that those conditions were imposed? Why couldn't you have brought suit then? No, Your Honor. And this is where we say with respect to the Sixth Amendment cases and the Ninth Amendment cases, there's really no conflict between what we're saying in those cases. Those cases dealt with fully effectuated takings. In other words, association home, for example. There was a mechanism and a formula put in place that was clear, defined. You knew that was the formula at that point. Here we had a two-year moratorium that said, okay, we're going to stop you right now from building beyond the 1.854 million, but you can, after you get to 90 percent occupancy and you wait two years, come back to us and in our discretion we'll decide whether or not to lift it. So it isn't fully effectuated. But you were claiming that the imposition of the condition, the way that it changed the process to get to 3 million, if you ever were going to get there, impaired your right to petition because it required you to go to the town board. That was in effect when the addendum and the resolution was adopted, right? And, Your Honor, with respect to that restriction, yes. But as the district court correctly found, our First Amendment claim isn't time-barred because of the fact it's a continuing and ongoing violation of the First Amendment that prevents us to this day from petitioning. And under the case law that the district court correctly identified, that is a fresh and viable cause of action as long as that First Amendment restriction remains in place. Could the town have just denied your application to go from the 1.8 million to 3 million square feet outright at the time? The planning board could have. The town board didn't have jurisdiction to do that. So what the town board did was they usurped, and this is one of the State law claims, admittedly, but they usurped the jurisdiction of that planning board. So the planning board could have said, looking at the impacts, looking, going through the criteria that are set forth in the zoning code, we believe there are impacts here that prevent you from getting approval. But if the planning board could have denied it outright, and the town board governs the town as a whole, even though New York allows a delegation of certain authority to the planning board, why wasn't it within the purview of the town board to place some conditions on it and say, listen, this is a matter for the voters? That's what they did. There are two aspects to that question, Your Honor. One is, did the town board have the authority or the jurisdiction to do that? And the case law that we've identified in our briefs makes it clear that once the town board creates a planning board, delegates site plan review authority and jurisdiction to the planning board, the town board is done. They don't have any other authority. How can the delegee have more power than the delegator? Well, New York State law and the Constitution say so, Your Honor, is the bottom line with respect to that. It creates a panel with exclusive jurisdiction, I think to avoid the type of abuse that you see here, which is the town board says we have unfettered discretion. We can ask for whatever we want for release of this covenant to allow you to just exercise rights that any other landowner has, as opposed to the planning board that has criteria it has to follow. It has a public process, hearing requirements, publication requirements. That's one of the reasons why it's structured that way. And second of all, when we're talking here about this particular case, one of the things you're saying is you town decided to create a discretionary benefit. You said if we come back to you, you will have discretion. That's what they claim. They say they have discretion. You said in your brief and noted me that it was an implied promise that turned out to be illusory. And that struck me as curious, because since it was implied, it was never explicit. And it was always illusory in some respects. And it was just a process for you to come back. Why was that an abuse of discretion? Well, Your Honor, it's not the abuse of discretion standard in the first instance. It's the Kuntz standard with respect to that decision when we come back. Once you create a discretionary benefit. Why did that impair your rights, then? Let's put it that way. Okay. When you create a discretionary benefit as a town and you say we have discretion when you come back to grant or deny you the release of this covenant, once you do that, you subject yourself to Kuntz, because you have created a discretionary benefit. And the court in Kuntz said it doesn't matter if you're entitled to it. It doesn't matter if the town could just say no. Once they say no, but if you do this, then those conditions that are attached have to be scrutinized under Kuntz. And the reason is because what you saw in Sherman, this Court saw in Sherman, in a public process with the amendment of a zoning code, with changes to the site plan approval process that were public, there can be a challenge. And Sherman eventually got to the point where there was a challenge. Here, this is going on behind closed doors. Each time we go back, including in the three years prior, there are new demands. It's curious, though, that what was ultimately submitted to the voters in a referendum you call a behind closed doors process. Your Honor, the referendum requirement itself is problematic, not just because of the fact that it serves as a further barrier to entry to the planning board, but the burden that it places on our First Amendment right as a result. Do you believe your client was entitled to the $3 million, $3 million square feet permit? The entitlement issue would be relevant if we were talking about the due process type claims. It's not relevant to the unconstitutional conditions doctrine. But do you believe they were? We believe that they were after complying with the process at the planning board. But you believe you were entitled to a yes after the 24 months had passed? We believe that we were entitled to have a consideration that didn't result in new exactions. And I see my time is up. I would just briefly conclude that if you allow what happened below to stand, you're and this Court's decision in Sherman. As long as the town structures it in a way where it happens where you have to come back and they have discretion as they claim unfettered discretion, then you can't enforce Kuntz and its restrictions. All right. You have two minutes rebuttal here for your adversary. Thank you. Good morning. May it please the Court. John Flannery from Wilson-Elster on behalf of the town of Clarkstown. The lower court correctly dismissed the second amended complaint on both statute of limitations grounds and on a failure to state a claim grounds. A CLECO is here challenging an agreement, a contract it made 20 plus years ago to buy town roads. A CLECO could not build the mall it wanted to build both at the 1.8 million square foot level and at the 3 million square foot level without acquiring the town roads. So what did they do? They entered into a purchase agreement. Now, how does that come about? The town, according to state law, has to pass a resolution abandoning the roads. The town passes that resolution and reaches an agreement with a CLECO on a purchase price and certain conditions that would be placed upon the property. Those conditions were a restrictive covenant prohibiting further expansion unless and until the restrictive covenant was lifted by the town board and was subject to a permissive referendum. Why subject to a permissive referendum? Because state law mandates it. Town law section 64-2 mandates that the conveyance of property by a municipality is subject to a permissive referendum. We hear now a CLECO saying that that violates their constitutional rights. But if you look back at what they said in 1996 and 1997, it differs dramatically. What did they tell the Supreme Court when taxpayers sued to stop the town from selling the roads to a CLECO? A CLECO said in its filings both at the Supreme Court and in the Appellate Division Second Department, no controversy exists regarding the validity of the no expansion provision because all parties agree that it is valid and enforceable. That's what they told the New York State court system. 20 plus years ago. But now the same restriction they claim is violating their constitutional rights. The lower court correctly and appropriately dismissed this complaint. There is no First Amendment. Could you address your adversary's argument that the town board didn't have the authority under New York law to take back some of the jurisdiction it had ceded to the town planning board because of how the state law and town law, I guess, conceptualizes real estate approvals? Right. But in this instance, the town board did not take anything back from the planning board. The jurisdiction under town law section 64-2 to abandon town property or to sell town property is exclusively within the town board. That was never within the planning board's discretion. It wasn't then. It wouldn't be now. The authority to convey real property by a municipality lies exclusively under New York law with the town board of that town. And with respect to the conveyance of the land that was related to the two roads, that had been originally discussed in connection with approval for the 1.8 million square feet, right? Right. That's correct. And then all of that got tied up into the application to expand to 3 million square feet. That is correct. CLECO could not build them all at the 1.8 million square foot level that it was proposing without the discontinuance of the town roads. It doesn't matter if it's 3 million GLA or 1.85 million GLA. They couldn't build them all they wanted to build unless they got the discontinuance of these town roads. So they reached an agreement with the town to purchase them. The record suggested to me that had they remained at 1.8 million, the town had already expressed through the supervisor a pretty clear intention to agree to the transfer. These have been lands that have been flooded regularly and that were ill-maintained and so on. And it was the changing aspect of the application that caused the town to withhold the approval. And I think part of what your adversary is arguing is that they were entitled to fresh consideration of the 3 million square feet application by the planning board separate apart. So this was something that they were entitled to and that was withheld unconstitutionally by the town. So what's your response? Even if that was true, that would be a claim that accrued in 1996 and 1997, not a claim that accrued in 2016. There are courts that have said, though, for zoning matters or zoning ordinances, that this is in the nature of a continuing violation or continuing wrong and that each time it's enforced, for example, in the denial of reconsideration of the 3 million application, that's a new wrong. And that's how we should conceive of accrual. Why isn't that correct? Because this is not a zoning law. This is not a law of general provisions. This is a resolution and a restrictive covenant regarding the sale of property, the sale by the town to a CLECO of its property for which there were conditions that were placed on that sale, conditions that were agreed to at the time. That's the point. Let me ask you about the equal protection claim because I'm a little confused about why that would be time barred. They allege activity within three years of the filing of the complaint. They allege they were trying to get the conditions lifted. They allege that this company, Tilken, applied and was successful in their efforts to expand. They have, you know, other instances in the past, but they're saying that this is essentially and you can have a continuing violation type of doctrine. The doctrine can apply to an equal protection claim under our case, Cornwell v. Robinson. So why isn't that sufficient for time bar purposes? Because under the equal protection claim, there is no comparator, number one. That's a separate issue. I understand your merits argument is separate from the issue of statute of limitation, but they allege all kinds of activity within the three years is what I'm telling you, that they say they were being treated, you know, essentially as a class of one. Everybody else is getting approval and we're not. So I have a hard time understanding why that that is an untimely claim. Because there are no non-time barred acts regarding any comparator that are alleged. The only comparator. You don't have to have a comparator in the time. If someone, for example, applies to something for the government and they are denied based upon their race, for example. It happened four years ago, right? But then another person comes up within the three years who is white and gets approved. Then at that point, you know, the fact that it happened to another person four years ago doesn't mean there's no equal protection claim, right? Well, the TILCON discontinuance of the road is the only one within the statute of limitations, and there's nothing other than in there. They applied. They applied within the three years. They went back and they applied within the three years and got rejected. And then I think at that point they can compare themselves to others even before the three-year period when they're saying this is something that has occurred to them over time. Like they're comparing themselves to the shops, for example. Right. And there's nothing with the shops that happened after 2012. Suppose they're not ready to build again. Suppose the shops gets approval, right, four years ago. They're not ready to build yet. So they don't bring it right away. They wait until they're ready to build, which may be, you know, now. The claim wasn't even right then if they'd bring the claim at the time the shops got approval. You understand what I'm saying? Yes. But what they allege in the complaint in paragraphs 169 and 170 is they made efforts, the allegations they made efforts with the town to have the town lift the restrictive covenant without it being subject to a permissive referendum, which in and of itself would violate State law. So they're — What's your argument on the merits of the equal protection claim? Right. But what they're saying is that they made a request that would violate State law and somehow that triggers a new statute of limitations. That can't be. They're not linking it specifically to State law. They're just saying that they were not getting approval. Other people were getting approval. And it's not linked to any specific State law. Right. And there's nothing in the complaint that says they actually made a formal request to have the town board vote to lift the restrictive covenant. What's your argument on the merits of the equal protection claim as to why they would not prevail even if it was timely? The argument is there are no comparatives. They cite to no comparatives. Who are similarly situated. Who are similarly situated to them? The only entity that they cite to is the shops at Nanuet. The shops at Nanuet is a mall less than half the size. The shops at Nanuet is 700,000 GLA, almost 800,000 GLA. They're 1.8 million. They're a million square feet more. The shops at Nanuet never required the discontinuance of a town road to build on their property. They redeveloped on their own property. It's not we're comparing apples and oranges when we're talking about the shops at Nanuet and the Palisades Mall. Okay. Thank you very much. I think we have the argument. Mr. Leslie, you have two minutes of rebuttal. Thank you, Your Honor. I think I'll go straight to the equal protection issues that Judge Bianco was asking about a minute ago. With respect to the acts in the three-year period, we do allege specifically that we approached the town board. They understood it to be an approach to seek lifting the restrictive covenant and the ability to go back to the planning board. There's no dispute about that. They haven't denied that. And in response, we got a demand for millions of dollars, monetary exaction and other concessions in exchange for granting us back the constitutional right that they took from us. That action, that activity in the three years prior is sufficiently alleged in the complaint. It's alleged in multiple places in the complaint and in detail that that occurred. I'm sorry. In which constitutional right are you focusing on? It applies and is relevant, Your Honor, both to the unconstitutional conditions claim with respect to our Fifth Amendment rights. It's also relevant to the First Amendment rights because, as the district court found, it constituted enforcement. It's also relevant to the equal protection. Under the continuing violations doctrine, we have fresh acts within that period prior to commencement. The fundamental argument on the equal protection claim on the merits is that the shops wasn't seeking to get access to a road, to buy a road in order to accomplish their expansion, and that's what this case is all about, whether or not when someone is purchasing something from the municipality, can it be conditioned. So how is that similarly situated to your client if they didn't need a road? Two points, Your Honor. One, the difference is the shops, the door was wide open. They could exercise their right. They could go to the planning board. They could go in normal course. The fact that they didn't isn't the material fact. The fact that we did is the material fact and it was closed to us. In addition, we don't rely only on the shops, although we believe the shops are the appropriate comparator. They're both zoned as major regional shopping centers. They're both sharing very significant characteristics in tenants and traffic, everything else. We also have the comparators of others who sought discontinuance of town roads and didn't face any sort of restrictions such as we face. So whether by identification of the shops or by amalgamation, which this Court recognized in Fortress Bible as a way to state this, it was appropriate. And let's not forget this was a motion to dismiss. This was at a motion to dismiss stage, and at this stage our allegations were more than sufficient. With respect to one last point, and I see my time is up, with respect to what happened 20 years ago and what was happening at the time, 20 years ago there was no Kuntz. 20 years ago New York law would not have allowed us to challenge this situation. We have here fresh acts that allow us to challenge it because of that continuing series of events, as well as constituting You have new law, new law, baby, but I'm not sure what facts are new. The new facts of what was done to us between 2014 and 2016 when they made the demands that have no nexus and no proportionality to the release of the restricted coverage. Thank you very much. Well argued. We will take the matter under advice.